**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Alexander Jung, | ) | No. CV 04-429-PHX-MHM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| John E. Potter, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now pending before the Court are Plaintiff's equitable claims for reinstatement, front pay, back pay, prejudgment interest, and attorney's fees. The parties have submitted their recommendations regarding these claims. The Court considers the papers submitted and issues the following Order.

**BACKGROUND**

On August 6, 2007, a jury awarded Plaintiff $280,000 in compensatory damages for his Rehabilitation Act Claim against the United States Postal Service ("USPS") in connection with his temporary light duty requests.  Plaintiff also seeks equitable remedies, including reinstatement, front pay, back pay, prejudgment interest, and attorney's fees.  The Court decides what equitable claims, if any, are merited.

**LEGAL STANDARD**

An award of damages under the Rehabilitation Act, which incorporates Title VII's remedial provisions (see 29 U.S.C. § 794) "must comport with Title VII's 'central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.'" McLean v. Runyon, 222 F.3d 1150, 1155 (9th Cir. 2000) (quoting Albemarle Paper Co. V. Moody, 422 U.S. 405, 422 95 S.Ct. 2362 (1975)). This Court's computation of damages is a finding of fact. See Amantea Cabrera v. Potter, 279 F.3d 746, 750 (9th Cir. 2002).

Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies to employees who have been impermissibly discriminated against. See 42 U.S.C. § 2000e-5(g) (1994). The relevant remedies include reinstatement, reassignment, awards of front pay, back pay, and prejudgment interest. Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1448 (9th Cir. 1990). A full complement of remedies for Title VII requires courts to remedy instances of discrimination by sending a strong message to those who may discriminate. See Albemarle Paper Co., 422 U.S. at 418 (holding that, in order to achieve "complete justice," district courts have the obligation to "render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future) (quotation omitted).

**DISCUSSION**

Plaintiff requests an award of equitable remedies, including reinstatement, front pay, back pay, prejudgment interest, and attorney's fees. The Court will discuss each request in turn.

**I.     REINSTATEMENT**

Title VII specifically allows reinstatement as a type of equitable relief that the court may order. 42 U.S.C. § 2000d-5(g)(1). However, reinstatement is discretionary, and before making such an award, the court should consider factors including whether the employer/employee relationship is acrimonious, whether plaintiff is able to work, whether

plaintiff is qualified for the job to which he will be reinstated, and whether the employer is satisfied with plaintiff's job performance. Gotthardt v. National Railroad Passenger Corp., 191 F.3d 1148, 1156 (9th Cir. 1999).

Plaintiff requests reassignment to a vacant position within the USPS in which the pay scale would be the same as the position he last held with the USPS. Defendant, on the other hand, claims that reinstatement is inappropriate because of the antagonism between the parties. The evidence at trial and the subsequent briefing on the equitable claims indicates sufficient acrimony between the parties to preclude Plaintiff's reinstatement with the USPS. For example, the parties experienced quite a bit of discord over the four-hour-a-day light duty offer Plaintiff received in March and again in April 2002 , which resulted in Plaintiff's removal from the Postal Service building in March 2002 because he would not sign the offer. Trial Transcript ("Tr. Tran."), 7/31/08, at 190 - 193; Tr. Tran., 8/1/08, at 219. Another example of the acrimony between the parties is the dispute about when Plaintiff developed a knee injury. Defendant asserts that Plaintiff developed a knee injury while in the Army and that he concealed the injury when applying to the USPS in order to obtain a position. In contrast, Plaintiff claims he did not have a knee injury while he was in the Army and that he did not conceal a knee injury when applying to the USPS. Based on the evidence of acrimony between the parties, reinstatement is not an appropriate remedy here.

## II.   FRONT PAY

Front pay is an award of future lost earnings to make the victim of employment discrimination whole. See Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1346 (9th Cir. 1987). An award of front pay is made in lieu of reinstatement when the antagonism between employer and employee is so great that reinstatement is not appropriate. Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1167 (9th Cir. 1984), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989); see also Thorne v. City of El Segundo, 802 F.2d 1131, 1137 (9th Cir. 1986). The plaintiff bears the burden of providing "the essential data necessary to calculate a reasonably certain front pay award."

Peyton v. DiMario, 287 F.3d 1121, 1129 (D.C. Cir. 2002) (citations and quotation marks omitted). "[F]ront pay is intended to be temporary in nature." Cassino, 817 F.2d at 1347.

Plaintiff claims he is entitled to front pay in the amount of $1,465,069.87, which represents the amount he would have earned as a USPS employee over his estimated career, from his present age of 42 until the retirement age of 65, with deductions for reasonable mitigating amounts. Thus, Plaintiff has approximated his future earnings as $56,500 a year with "mitigation" of $16,758 for a total future earning of $39,759 per annum times 23 years for a total of $1,465,069.87.

Defendant, on the other hand, contends that front pay is inappropriate because Plaintiff has found other employment with comparable salary and benefits.

> [F]ront pay awards ... must be reduced by the amount plaintiff could earn using reasonable mitigation efforts.... Thus, front pay is intended to be temporary in nature. An award of front pay does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing.

Gotthardt, 191 F.3d at 1157, citing Cassino, 817 F.2d at 1346.

In support of his claim for front pay, Plaintiff has cited Gotthardt, a Title VII case in which the court awarded front pay covering an 11-year period until the plaintiff reached retirement age. However, Gotthardt is distinguishable in that the plaintiff there was unable to return to work due to suffering from posttraumatic stress that was causally connected to the actions found to be in violation of Title VII. Gotthardt, 191 F.3d at 1157. Thus, the court there awarded the plaintiff front pay until she reached retirement age because she was unable to return to work. Id. The court noted, "[a]lthough an eleven-year front pay award seems generous, the district court explicitly found that Gotthardt would be unable to work in the future, taking into account her age (59), her educational and vocational background, and, especially, her health." Id. at 1129. Numerous other courts have acknowledged that it is rare that a person in his 40's would be awarded front pay until retirement age. See Davis v. Combustion Engineering, Inc., 742 F.2d 916, 923 (6th Cir. 1984) (upholding an award of

- 4 -

1  front pay to a 59 year-old plaintiff but noted that front pay for a 41 year-old plaintiff until
2  retirement age might be unwarranted). See also Stafford v. Electronic Data Systems Corp.,
3  749 F.Supp. 781, 789 (E.D.Mich.1990); Bailey v. Container Corporation of America, 660
4  F.Supp. 1048 (S.D.Ohio 1986); Foit v. Suburban Bancorp, 549 F.Supp. 264, 267
5  (D.Md.1982); Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231, 235 (N.D. Ga.1971)).

6        In the instant case, Plaintiff has been able to, and indeed has, returned to work.
7  Therefore, Plaintiff is entitled to front pay mitigated by his present employment and benefits.
8  In support of his front pay calculation, Plaintiff has submitted a table showing calculations
9  of pay and benefits he would have earned had he continued to work for the USPS until he
10 retired.  However, Plaintiff does not offset the projected USPS pay and benefits by his
11 current pay and benefits.  In fact, the only calculation Plaintiff provides regarding front pay
12 is the one-page table in which Plaintiff calculates all of the salary and benefits he would have
13 received at the USPS for the next 23 years. Plaintiff provides a "mitigation" of $16,759 per
14 year, but it is unclear what this "mitigation" figure represents. See Pl's Supp. Injunctive
15 Relief Statement, Exhibit 15.

16       The only evidence Plaintiff provides of his current pay is in relation to back pay.
17 Specifically, Plaintiff provides a pay stub from his current employer, California Pizza
18 Kitchen, showing that he had earned $37,351.38 from January until mid-October of 2007.
19 Calculating this salary to the end of the year shows that Plaintiff was in line to earn
20 $47,180.69 in 2007.  In comparison, increasing Plaintiff's 2002 USPS income by three
21 percent per year, Plaintiff would have made $51,384.82 in 2007. See Section III. Back Pay,
22 infra.  Thus, the difference between Plaintiff's 2007 income and his USPS income is
23 $4,204.13. As stated above, an award of front pay is intended to be temporary. Cassino, 817
24 F.2d at 1347.  Thus, the Court finds it appropriate to award front pay for five years in an
25 effort to assist Plaintiff to return to his previous level of employment. Accordingly, Plaintiff
26 is awarded $21,020.65 in front pay.

27
28

1    With regard to benefits, Plaintiff has not provided any details about the benefits he currently receives.  As stated above, a plaintiff bears the burden of providing the data required to calculate a reasonably certain front pay award.  Peyton, 287 F.3d at 1129. Without any data regarding current benefits, the Court is unable to make a determination of reasonable front pay after an offset of current benefits.  Because it is Plaintiff's burden to provide such data, the Court is not inclined to award additional front pay based on the speculation of the offset between Plaintiff's USPS benefits and Plaintiff's current benefits.

**III.   BACK PAY**

The purpose of back pay is to make a person whole for injuries suffered due to unlawful discrimination.  Caudle v. Bristow Optical Co., 224, F.3d 1014, 1020 (9th Cir. 2000).  An award of back pay is "determined by measuring the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by defendant."  Gotthardt, 191 F.3d at 1158 (internal quotations omitted). The plaintiff "bears the burden of proving the damages caused [him]."  Id.  However, the employer bears the burden of showing that the plaintiff failed to mitigate his damages. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995).  In calculating an award of back pay, the court should subtract "[a]ny wages the plaintiff actually earned after termination, plus the amount the plaintiff would have earned if he had made reasonable efforts."  Cassino, 817 F.2d at 1345.

Here, if back pay is warranted, the time period of such an award is contested.  Plaintiff seeks back pay beginning in March 2002, when Plaintiff stopped working for the Postal Service, and continuing through the time of trial in 2007.  Thus, Plaintiff requests back pay in the amount of $389,304.62, which includes $160,085.00 in back wages, $74,660.62 in pre-judgment interest, $137,543.00 in lost benefits, and $17,016.00 in lost 401(k) accumulation.

In contrast, Defendant claims Plaintiff is only entitled to back pay, if at all, from the last day Plaintiff worked at the USPS, March 8, 2002, until either July 1, 2002, when Plaintiff did not return to work after his medical leave, or the date of his termination,

- 6 -

1 September 28, 2002. Defendant contends that Plaintiff has not established that his September 28, 2002 firing was *caused* by the discriminatory acts the jury found in connection with his temporary light duty request submitted in March 2002. As evidence, Defendant cites the jury verdict in which the jury's findings were limited to Defendant's wrongdoing concerning "chang[ing] Plaintiff's work hours with no guarantee of hours and send[ing] Plaintiff home or requir[ing] Plaintiff to use leave on unspecified dates." Doc. 181 (verdict form). Thus, Defendant asserts that Plaintiff did not allege and did not prove constructive discharge or wrongful termination. Defendant cites numerous cases to support its position, none of which are authority here.

The appropriateness of back pay here turns on whether Plaintiff was constructively discharged. A person is constructively discharged if "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir. 1984). After Plaintiff requested a light duty assignment in March 2002, Defendant offered him only four hours a day instead of the eight hours he had been working. Defendant contends that a reasonable person would have taken the offer for four hours a day and then filed a grievance with the union regarding the limitation on his hours. However, a reasonable person could have felt that reducing his hours by half had the affect of forcing him to quit because he could not afford to work only half time. Thus, based on the theory of constructive discharge, the September 2002 "firing" is inconsequential because a reasonable person could already have felt terminated. Accordingly, an award of back pay is appropriate and will cover April 2002 through the trial in 2007.[1]

A plaintiff's back pay awarded in an employment discrimination action under Title VII must be reduced by that person's interim earnings where the income was earned during

---

[1] Awarding back pay is within the discretion of the trial court. Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978).

- 7 -

1  normal business hours within the applicable period for which back pay was awarded. Sias,
2  588 F.2d at 696.  Mathematical certainty in the computation of a back pay award is not
3  required. Kaplan v. Intern. Alliance of Theatrical, etc., 525 F.2d 1354, 1362 (9th Cir. 1975).

4  Plaintiff provides a calculation of $172,595 in back pay for 2002 through 2008.
5  However, the Court finds this figure a bit high.  First, Plaintiff's figure does not consider that
6  he worked for the USPS for the first two months and eight days of 2002.  Second, there is
7  no guarantee that Plaintiff would have earned the annual raises indicated in Plaintiff's chart.
8  Moreover, in one chart Plaintiff submitted, he claimed salary outside the USPS of $27,069
9  for 2002.  Then, in a subsequent submission, Plaintiff claimed only $14,560 in outside salary
10 in 2002 (*cf* Doc. 209 exh. 2 *with* Doc. 201-2 at p. 2), yet he provided no explanation for the
11 discrepancy.  Nevertheless, based on the exhibits Plaintiff submitted it appears Plaintiff made
12 $17,068.84 in wages outside his pay for his position with the USPS in Phoenix.

13 Thus, the Court awards Plaintiff $129,777.61 in back pay.  The Court determined this
14 figure as follows.  For 2002, the Court awards $18,915.36. This figure is for the nine months
15 and 23 days of 2002 that Plaintiff did not work for the USPS Phoenix in 2002, which would
16 have amounted to $35,984.20, minus $17,068.84 in non-USPS pay.  For 2003 through 2007,
17 the Court increased by three percent per year Plaintiff's 2002 projected income of $44,325.00
18 Thus, $45,654.75 for 2003; $47,024.39 for 2004; $48,435.12 for 2005; $49,888.17 for 2006;
19 and $51,384.82 for 2007.  Then, the Court subtracted Plaintiff's $131,525 in non-USPS pay
20 from the total projected USPS pay.

21 Plaintiff has claimed a loss of benefits including health benefits, basic life insurance,
22 retirement plan thrifty savings plan, social security, medicare, sick, annual and holiday leave.
23 Plaintiff has provided a spreadsheet calculating the value of these benefits that he would have
24 received from USPS between 2002 and 2007 ($137,543 in lost benefits).  However, Plaintiff
25 has not provided any evidence of his present benefits or the difference between his projected
26 USPS benefits and his present benefits.  Thus, Plaintiff has not met his burden of establishing

- 8 -

entitlement to an award of lost benefits. See Gotthardt, 191 F.3d at 1158. Therefore, Plaintiff is entitled only to back pay wages offset by earning from other employment.[2]

## IV. PREJUDGMENT INTEREST

An award of prejudgment interest on a back pay award is appropriate. Domingo v. New England Fish Co., 727 F.2d 1429 (9th Cir. 1984). The rate of return on pre-judgment interest is within the discretion of the trial judge. W. Pac. Fisheries, Inv. v. SS President Grant, 730 F.2d 1280, 1288 (9th Cir. 1984). This discretion must be exercised with a view to the fact that pre-judgment interest is an element of compensation, not a penalty. Id.

Plaintiff requests an award of prejudgment interest at the rate of 10 percent per annum. Defendant claims that any prejudgment interest should be calculated using the Treasury Bill rate that is used for post judgment interest awards under 28 U.S.C. § 1961.

Because prejudgment interest is not to be considered a penalty, the Court will not use Plaintiff's suggested 10 percent to calculate the interest award. Instead, the Court finds it appropriate to use the Treasury Bill rate. See W. Pac. Fisheries, 730 F.2d at 1288 (9th Cir. 1984) (T-bill rate appropriate for prejudgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate."). Thus, the average Treasury Bill rate between March 2002 and trial in 2007, is 3.32 percent. Based on the award of back pay, and a per annum interest calculation, the Court finds it appropriate to award prejudgment interest in the amount of $21,343.86.

## V. REQUIREMENT TO MITIGATE DAMAGES

Defendant claims Plaintiff has not mitigated his damages because Plaintiff did not accept the light duty offer on March 5, 2002, in which Defendant offered Plaintiff work in the form of four-hour shifts. Defendant contends that if Plaintiff was not happy with the offer, he should have accepted it and then filed a grievance with the union.

---

[2] Plaintiff has already been compensated by the jury for his monetary losses for "moving expenses, job search expenses, medical expenses, psychiatric expenses and the like." Doc. 179 (jury instructions).

1  Plaintiff claims that he has mitigated his damages because he has been gainfully
2  employed since the date of his termination. Plaintiff has provided W-2 forms for 2002, 2005,
3  2006, and 2007. See Pl.'s Supp. Injunctive Relief Stmt, Exh. 6, 8-10. Plaintiff has provided
4  documentation relevant to the restaurant he opened and ran for 2003 and 2004 but that ended
5  up closing. See id., Exh. 7.

6  Under 42 U.S.C. § 2000e-5(g), Plaintiff must mitigate his damages, and his failure to
7  do so reduces his claims accordingly. The burden of proving a failure to mitigate damages
8  in a Title VII case is on defendant. Kaplan v. Intern. Alliance of Theatrical, etc., 525 F.2d
9  1354, 1363 (9th Cir. 1975). To satisfy this burden, Defendant must establish the following:
10 (1) that the damage Plaintiff suffered could have been avoided, *i.e.*, that there were suitable
11 positions available that Plaintiff could have discovered and for which he was qualified; and
12 (2) that Plaintiff failed to use reasonable care and diligence in seeking such a position. Id.
13 See also EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994); Edwards v. Occidental
14 Chem. Corp., 892 F.2d 1442, 1449 (9th Cir. 1990); Sias v. City Demonstration Agency, 588
15 F.2d 692, 696 (9th Cir. 1978).

16 Defendant claims that Plaintiff did not mitigate his damages because he did not accept
17 a light-duty offer for four hours of work a day. However, Plaintiff had been working full
18 time. Thus, it is questionable whether an offer for half-time work is a suitable position.
19 Moreover, Plaintiff found alternative employment shortly after leaving the USPS. Defendant
20 does not address Plaintiff's non-USPS employment and how that affects Plaintiff's
21 requirement to mitigate damages and Defendant's burden of establishing a failure to mitigate.
22 Thus, Defendant has not met the test because it has not established that the damage Plaintiff
23 suffered could have been avoided, nor that Plaintiff failed to use reasonable care and
24 diligence in seeking a position. See Kaplan, 525 F.2d at 1363. Accordingly, Defendant has
25 not proven that Plaintiff failed to mitigate his damages; Plaintiff's equitable damages award
26 will not be reduced.

27
28

1 **VI.    ATTORNEY'S FEES**

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Local Rule 54.2, the time for filing claims for attorney's fees is after judgment has been entered. According to Local Rule 54.2(b)(1), the party seeking attorney's fees must file a motion within fourteen days after entry of judgment. The motion must specify "the applicable judgment and statutory or contractual authority entitling the party to the award[] and the amount of attorney's fees sought or a fair estimate of such an amount." Then, within sixty days of the judgment, a memorandum is to be filed that includes documentation required by Local Rule 54.2(d). Accordingly, a determination of attorney's fees is not ripe at this time.

## CONCLUSION

**IT IS ORDERED** denying Plaintiff's request for reinstatement.

**IT IS FURTHER ORDERED** granting Plaintiff equitable remedies in the amount of $21,020.65 in front pay, $129,777.61 in back pay, $21,343.86 in prejudgment interest, totaling $172,142.12 in equitable damages. The Clerk's office shall enter Judgment accordingly.

**IT IS FURTHER ORDERED** denying without prejudice Plaintiff's request for attorney's fees.

**IT IS FURTHER ORDERED** directing the Clerk's Office to enter Judgment with regard to Plaintiff's compensatory damages in the amount of $280,000, pursuant to the jury verdict of August 6, 2007.

**Judgment entered accordingly.**

DATED this 27th day of June, 2008.

_____
Mary H. Murguia
United States District Judge